*D. Goodenow*, for the plaintiffs.

*N. D. Appleton*, for the supposed trustee.

---

PALMER & als. *versus* HORACE A. PINKHAM & JOHN SAYWARD.

A witness will not be permitted to testify what course of action he should have taken, if certain specified facts had not occurred.

A party is responsible for the ideas which his language was suited to convey, and did convey to the mind of another person, if such person has thereby been led to perform, or omit to perform, any act in relation to his interest.

ON EXCEPTIONS from *nisi prius*, SHEPLEY, C. J., presiding.

The plaintiffs are merchants in Boston. The defendants reside in York county in this State. Pinkham represented to the plaintiffs, in writing, that he was in copartnership with the defendant, Sayward, under the name of Horace A. Pinkham & Co., and wished to purchase goods for the company. The plaintiffs furnished him with goods, and charged them to Horace A. Pinkham & Co.

This suit is brought to recover for those goods. Pinkham was defaulted; Sayward defends and denies the alleged copartnership.

The case shows the following facts: —

Soon after giving the credit, the plaintiffs having some distrusts as to the existence of a copartnership between the defendants, directed Mr. Appleton, an attorney at law, residing in the same county with the defendants, to ascertain how the fact was, and to take care of the plaintiffs' rights.

Mr. Appleton testified *that* he went to the town where the defendants resided ; *that* he took with him an officer and was prepared to make an attachment ; *that* he called first on Pinkham, who affirmed that the copartnership existed ; *that* he afterwards called on Sayward, and stated to him the object of his visit, and inquired of him if he was a partner with Pinkham ; *that* Sayward answered " yes," and said the plaintiffs would have no trouble about their debt, and that it would be paid, and then went into some exposition of his property affairs ; *that* he, Mr. Appleton, then went away without making any attachment.

Some witnesses, for the defendants, testified they were present at the conversation between Sayward and Mr. Appleton, and they gave a different version of it. Mr. Appleton was asked by the plaintiff the following question : — " whether or not should you have attached the property in the store, had it not been for Sayward's statement that he was a partner ?" The defendant objected to the question, and it was excluded by the Court. The verdict was for the defendant, and the plaintiffs excepted to that exclusion.

There was also a notice for a new trial, (upon which evidence was introduced,) upon the alleged grounds, —

1st. Because the verdict is against law and against the direction of the Court.

2d. Because the verdict for the defendant, John Sayward, was not only without any sufficient evidence to support it, but against the uncontradicted evidence, and most manifestly against the weight of evidence.

3d. Because justice has not been done between the parties.

*W. P. Fessenden* and *Bourne*, for the plaintiffs.

*Clifford* and *D. Goodenow*, for the defendant Sayward.

SHEPLEY, C. J. — The defendant Pinkham appears to have been a trader in the town of Waterborough and to have failed in business there during the year 1847.

In the month of October, 1848, he appears to have applied to the plaintiffs in Boston, to purchase goods, representing to them, that the other defendant, John Sayward, was a partner with him, doing business under the name of Horace A. Pinkham & Co.

The defendant Pinkham had been defaulted. The defendant Sayward at the trial denied, that he had ever been a partner of Pinkham, that he had ever authorized him to represent him to be a partner, or that he had ever held himself out to be a partner.

On or about the 24th of October, 1848, the plaintiffs sold goods to Pinkham on credit, charging them to Horace A. Pinkham & Co. Under date of November 17, 1848, they addressed a letter to an attorney, Mr. Appleton of Alfred, enclosing a copy of the representation made to them by Pinkham, and requesting him, if it were found to be untrue, to call for payment.

Mr. Appleton in his testimony stated, that their letter was received on Saturday evening; that on Tuesday following he called upon Pinkham and was assured by him, that the representation was correct; that he desired him to send for the defendant, while he proceeded further on business; that on his return he saw the defendant, stated to him the object of his visit, and inquired of him if he was a partner of Pinkham, and received an answer, that he was. That he also made certain inquiries respecting his property and debts, which were answered; that he returned without making any attachment of property, and wrote an answer to the plaintiffs on November 21, 1848, which was produced and received as testimony to show that the plaintiffs afterwards sold other goods to Pinkham, relying upon the representations made by the defendant to Mr. Appleton, and by him communicated to them.

The counsel for the plaintiffs propose to inquire of Mr. Appleton, " whether or not should you have attached the pro-

perty in the store, had it not been for Sayward's statement that he was a partner?" This they were not permitted to do, and their right to do so is presented by a bill of exceptions.

The testimony proposed to be introduced would have presented no fact for the consideration of the jury. After the lapse of nearly two years, the witness could only express an opinion respecting what he should have done under circumstances, which did not at the time call upon him to come to any such conclusion, or to form any such opinion. Persons' rights would be very insecure, if they were to depend not upon facts or declarations, but upon opinions or conjectures of a witness respecting what he should have done under other circumstances than those actually presented for his consideration. The rights of the parties could not depend upon any undisclosed purposes or intentions of the witness. The proposed inquiry was properly excluded.

The case has also been presented under a motion to have the verdict for the defendant set aside as having been found against evidence or the weight of evidence.

There were three witnesses introduced by the defendant, who testified, that they heard the conversation between Mr. Appleton and the defendant. They stated positively, that they heard the commencement of that conversation, and the language used by Mr. Appleton, when he inquired of the defendant, whether he was a partner, and the language used by the defendant in answer.

Whatever may be the impression of the court respecting their perfect accuracy, there can be no doubt, that the jury were the proper judges of it, and that they cannot be regarded as acting under any prejudice or improper influence, if they concluded, that the testimony of those witnesses was worthy of credit.

Those witnesses stated, that the first question respecting this business put by Mr. Appleton to the defendant, with some change in the collocation of the words, was, "are you in company in the store with Pinkham?" and that the answer was "yes."

It is admitted, that the jury were fully authorized from the testimony to find, that the defendant had never in fact been a partner with Pinkham.

Their finding upon the point, whether he had held himself out to Mr. Appleton to be a partner, can only be supported upon the ground, admitting the testimony of the defendant's witnesses to have been correct, that he misapprehended the meaning of the question, supposing it to refer to the interest of Pinkham and himself in the store or building in which the business was transacted.

The facts out of which this alleged misapprehension arose, appear to be these : —

Joseph Sayward, a brother of the defendant, being the owner of half an acre of land with a house, barn and store upon it, conveyed it in mortgage to William M. Scribner, on August 14, 1846. Scribner, on the 22d day of the same month, assigned that mortgage to Abiel Hall, who, on Dec. 27, 1847, assigned the same to Cyrus K. Robinson, who had, on Dec. 4, 1847, purchased at auction the right in equity of Joseph Sayward to redeem the estate.

Pinkham had purchased of Joseph Sayward his right to redeem the estate from that sale and from the mortgage, and made arrangement with the defendant Sayward to have him purchase Robinson's right to the mortgage and to the equity of redemption, and convey them to him upon certain terms. The defendant Sayward, on August 29, 1848, received a conveyance from Robinson of his right, title and interest, and on the fourteenth day of September following took an assignment from Robinson of the mortgage. The defendant Sayward, therefore, when he had the conversation with Mr. Appleton, was the owner of the estate subject to Pinkham's right to redeem it. They had no joint interest in it ; each owned separately.

The proper signification of the word " company," when applied to persons engaged in trade, denotes those united for the same purpose or in a joint concern. It is so commonly used in this sense or as indicating a partnership, that few per-

sons accustomed to purchase goods at shops, where they are sold by retail, would misapprehend, that such was its meaning. The defendant must be supposed to have understood its meaning as used in common parlance. If he could have supposed, that the inquiry had reference to the store only and not to the business transacted in it, he could not have answered correctly, that he was in company in the store with Pinkham, because he must have known, that they had no joint or common interest in it.

The defendant must be responsible for the ideas, which his language was suited to convey to other minds.

If there was any thing equivocal in it, and other persons were fairly entitled to receive it as making known to them, that he was a partner of Pinkham in the business transacted in that store, he cannot be relieved from the consequences resulting from his own language fairly interpreted.

The jury would be authorized to find that he used only a single affirmative word, but he must be regarded as understanding the question to convey the ideas, which would be commonly communicated by it ; or, in other words, as understanding the language in the sense, in which it would be generally understood.

When the case is thus presented, it is difficult to believe, that the jury could have found a verdict for the defendant, without being unduly biased by the consideration, that a different verdict would deprive the defendant of a considerable portion of his property without any valuable consideration received therefor ; or that they did not act under some other improper influence or prejudice.

*Verdict set aside and new trial granted.*